UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MOHAMMED AHMED HASSAN ABDALLAH OMRAN,
         Plaintiff,

     v.                                          CIVIL ACTION NO. 14-13881-LTS

UNITED STATES OF AMERICA, ET AL.,
         Defendants.

MEMORANDUM AND ORDER

SOROKIN, U.S.D.J.

BACKGROUND

I.    The Instant Action

On October 14, 2013, Plaintiff Mohammed Ahmed Hassan Abdallah Omran ("Omran"), then a pretrial detainee at the Caddo Parish Correctional Center in Shreveport, Louisiana, filed this self-prepared civil complaint asserting claims under Bivens[1] and the Federal Tort Claims Act ("FTCA") against a number of federal Defendants, and his landlady, a private citizen. Specifically, these Defendants include: (1) Karen Bisson (landlady); (2) Philip Bleezarde, an agent with the Bureau of Immigration and Customs Enforcement ("ICE") and stationed in New Hampshire; (3) Kevin Clothier, an ICE agent stationed in New Hampshire; (4) Brendan Galway, an agent employed by the Federal Bureau of Investigation ("FBI") and stationed in New Hampshire; (5) Dan Catchins, an ICE agent and property officer stationed in the Commonwealth of Massachusetts; (6) the FBI; (7) ICE; and (8) the United States of America. Additionally,

---

[1] Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). "The Bivens doctrine allows plaintiffs to vindicate certain constitutionally protected rights through a private cause of action for damages against federal officials in their individual capacities." DeMayo v. Nugent, 517 F.3d 11, 14 (1st Cir. 2008)

Omran names two other Defendants of unknown identity: (1) the person responsible for the custody of Omran's computer after seizure; and (2) the ICE Director of the Office of Professional Responsibility. He contends that all of the federal Defendants acted in their official and individual capacities and are not entitled to qualified immunity.

The relevant background information is as follows. On August 30, 2012, Omran was arrested by ICE agents at his work in Barrington, New Hampshire. Thereafter, he was detained at the Strafford County Department of Correction in Dover, Massachusetts.[2] On September 5, 2012, Omran was indicted for two counts of False Claim of Citizenship. Omran alleges that 19 days later, on September 24, 2012, ICE Agent Bleezarde and FBI agent Galway visited his home in Methuen, Massachusetts, and conducted a warrantless search and seizure. They seized Omran's personal computer, which was password protected. The next day, these two agents visited a house in New Durham, New Hampshire belonging to one of Omran's friends. Omran had stored some of his personal property at that location. He alleges that these two Defendants conducted another warrantless search and seizure, opening closed boxes and locked suitcases, and seizing personal property.

Subsequently, on October 10, 2012, ICE Officer Bleezarde applied for a search warrant in order to bypass Omran's computer password and search the content of his computer. Omran alleges the search warrant was issued based on fabricated statements by Officer Bleezarde.

Next, Omran claims that Defendant ICE Officer Clothier searched the contents of his computer, exceeding the authority provided by the search warrant, thereby violating Omran's privacy rights. He further alleges that the unknown Defendant who was responsible for the

---

[2]Per a stipulation, Omran remained in detention pending trial and during the pendency of his criminal case. Omran v. United States, 2015 WL 570723, *2 (D.N.H. Feb. 10, 2015).

custody of the computer permitted other, unauthorized individuals to view the contents of the computer, thereby exceeding the scope of the search warrant.

On March 11, 2013, the Indictment was dismissed,[3] and Omran was transferred to the Suffolk County House of Correction in Boston, Massachusetts. He contends that a friend delivered a suitcase to the ICE Regional Office in Burlington, Massachusetts. The suitcase contained Omran's important documents, clothes, wallet and other personal items. The ICE property office in Burlington searched the contents of the suitcase and seized some of the documents without a search warrant. These items included Omran's driver's license and social security card. Thereafter, Omran was transferred to a detention center in Alabama, and later, to several different facilities in Louisiana. He claims that he has made several requests from ICE's regional office in Burlington concerning his missing documents. He received some of the documents while detained at the Tensas Detention Center in Louisiana, but other documents still are missing.

Omran filed an internal complaint against Officer Bleezarde with the Office of Professional Responsibility of ICE. As of the time of filing of the instant Complaint, he did not know whether any investigation took place and/or whether there was any decision or disciplinary action taken.

Omran alleges violations of the Fourth Amendment based on alleged unreasonable searches and seizures, as well as Fifth Amendment due process and equal protection violations,

---

[3]It appears that on February 11, 2013, the Government filed a Motion to Dismiss the Indictment without prejudice, which Omran opposed on the grounds that he wanted a jury trial to expose Government misconduct. On March 6, 2013, the Court granted the motion over Omran's objection. Omran appealed the Order; however, because the dismissal was without prejudice, it was not an appealable order. The First Circuit dismissed the appeal. Omran, 2015 WL 570723, at *4.

and violations of his right to privacy. He contends he has suffered extreme emotional distress, and has attempted suicide more than once as a result of the Defendants' actions. As relief, Omran seeks $5 million in damages, a declaratory judgment, and an injunction directing that all of his alleged illegally seized property be returned to him. He also seeks an order for the destruction of all copies made of his documents, digital storage media, and computer hard discs in such a manner that future recovery of the data would be impossible. He requests a jury trial on his <u>Bivens</u> claims "before a decision or a judgment is entered with regard to the Federal Tort Claim. Compl. at 1.

Along with the Complaint, Omran filed a Motion for Leave to Proceed *in forma pauperis* (Docket No. 2) accompanied by a certified prison account statement.

On March 30, 2015, Omran filed a Motion to Amend Civil Complaint (Docket No. 10) seeking to add two more Defendants: (1) Nicole Roy, United States Marshal; and (2) the United States Marshal Service. An Amended Complaint was attached as an Exhibit (Docket No. 10-1), and it is substantially similar to his original. Omran contends Nicole Roy asked him to provide her with an address to ship his property, and made him sign a document stating that he received his property. He claims that signature is invalid and was made under duress and threat of violence. Further, he alleges that she allowed someone to access his computer and tamper with the hard drive before it was shipped to New Hampshire. As a result, he lost valuable personal files, family photographs, private e-mails, and private journals. He now seeks $10 million in damages.

II.     <u>Civil Litigation in the State of New Hampshire</u>

Apart from the instant civil rights lawsuit, Omran filed another related <u>Bivens</u> civil rights action in the State of New Hampshire. <u>Omran v. United States</u>, Civil Action No. 1:14-505-DBH.

4

See Omran, *supra*, 2015 WL 570723. Also included in that action were claims arising under the FTCA, the Civil Rights Act, and unidentified related state causes of action.[4]

That civil action also stemmed from Omran's criminal prosecution, and included, *inter alia*, claims against Officer Bleezarde for allegedly making false statements in a search warrant application to the effect that Omran's roommate/landlady (Karen Bisson) informed law enforcement about the existence of incriminating files on Omran's computer after she conducted her own search of the computer in Omran's absence. Omran disputed the truth of that statement on the grounds that his computer was password protected and unknown to his roommate. Omran, 2015 WL 570723 at *3. As in the instant action, Omran claimed he suffered severe emotional distress, and sought declaratory relief and $5 million in damages.

On December 30, 2014, the United States Magistrate Judge recommended dismissal of Omran's action. On February 10, 2015, after a *de novo* determination, United States District Judge Brock Hornby issued an Order Affirming Recommended Decision of the Magistrate Judge. Id. at 9. As part of the decision, the Court found Omran failed to state a plausible equal protection claim based on his ethnicity and national origin because he did not identify any alleged facts from which discriminatory intent reasonably could be inferred. All that he had alleged was that he was an Egyptian National. Id. at 8. Further, the Court found that Omran had not suffered any due process or equal protection claims based on the allegation of the failure of the New Hampshire Attorney Discipline Office to investigate and to do their job. The Court found there was no right to compel a state to do something "to" someone else, and thus Omran

---

[4] Omran named as Defendants the District Court Judge presiding over the criminal case, the Assistant United States Attorney prosecuting the case, his prior and successor appointed defense counsel, the New Hampshire Attorney Discipline Office, and others.

lacked standing to assert a constitutional claim. Id. at 7.

Finally, with respect to Omran's claims under the FTCA, the Court noted that the Government does not waive its sovereign immunity with respect to the exercise or performance or failure to exercise or perform a discretionary function. Id. at 9 citing 28 U.S.C. § 2680(a).

III.  Civil Litigation in the United States Court of Federal Claims

On February 26, 2015, Omran filed a civil complaint pursuant to the FTCA and Civil Rights Act, although the Court docket lists the cause of action as raised pursuant to the Tucker Act, 28 U.S.C. § 1491. Omran v. United States, Civil Action No. 1:15-00186-LB. Once again, his claims arise out of his criminal prosecution in New Hampshire. He takes issue with his court-appointed counsel's performance in that case, and again alleges that Officer Bleezarde fabricated his statements in order to obtain a search warrant, and that Officer Clothier searched his computer exceeding the scope of the search warrant. On February 26, 2015, Onmar was directed to pay the filing fee or file an application to proceed *in forma pauperis*. The action remains pending.

## DISCUSSION

I.  The Motion for Leave to Proceed *In Forma Pauperis*

Omran's detainee status *(i.e.*, whether he is a prisoner, pretrial detainee, or alien detainee) is unclear. At the time he filed the instant Complaint, however, he stated that he was a pretrial detainee awaiting trial. Thus, for purposes of determining *in forma pauperis* status, this Court deems him to be a "prisoner" as defined by 28 U.S.C. § 1915(h).

Upon review of Omran's financial affidavit and prison account statement from Caddo Parish Correctional Center in Louisiana, this Court finds that he lacks funds to pay the $400.00 filing fee for this action. Nevertheless, because he is a prisoner, he is obligated to pay the filing

fee in installments pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915 (the *in forma pauperis* statute).

Accordingly, Omran's Motion for Leave to Proceed *in forma pauperis* (Docket No. 2 ) is ALLOWED, and he is Ordered to pay the filing fee as follows.

    A.    Omran is assessed an initial partial filing fee of $18.04, pursuant to 28 U.S.C. § 1915(b)(1)(B);[5] and

    B.    The remainder of the fee $381.96 is to be assessed and collected in accordance with 28 U.S.C. § 1915(b)(2).

This assessment is made apart from any other assessments made in other civil actions filed by Omran; however, for purposes of clarification for crediting any funds received from him, this Court intends that any funds received from his prison account first be applied to any prior Order of a Court assessing a filing fee pursuant to 28 U.S.C. § 1915.

On March 19, 2015, Omran filed a Notice of Change of Address (Docket No. 8), indicating that he has been transferred to Natchitoches Detention Center in Natchitoches, Louisiana. The Clerk shall send the Treasurer's Office at Natchitoches Detention Center a copy of this Memorandum and Order to facilitate payments to this Court.

II.    Screening of the Complaint

Because Omran was a prisoner at the time of filing his Complaint, the screening provisions of the PLRA come into play. The PLRA contains several provisions which grant this

---

[5]The initial partial assessment represents 20% of the average monthly balance in Omran's prison account as reflected in his prison account statement. This calculation was manually prepared based on the prison account statement submitted and is made without prejudice to Omran seeking reconsideration based on certified account information in accordance with the formula set forth in 28 U.S.C. § 1915(b). Further, the initial partial assessment is made regardless of whether or not Omran currently has sufficient funds in his prison account to pay. The *in forma pauperis* statute requires the initial partial filing fee be assessed, but collection to occur "when funds exist." 28 U.S.C. § 1915(b)(1).

Court the authority to screen and dismiss prisoner complaints. See 28 U.S.C. § 1915 (proceedings *in forma pauperis)*; 28 U.S.C. § 1915A (screening of suits against governmental officers and entities).

Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii).

Section 1915A also authorizes the Court to review prisoner complaints in civil actions in which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A.

Further, in addition to the statutory screening requirements under § 1915, this Court has an independent obligation to inquire, *sua sponte,* into its own subject matter jurisdiction.[6] McCulloch v. Velez, 364 F.3d 1, 5 (1st Cir. 2004). "Whenever it appears... that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3).

---

[6]See In re Recticel Foam Corp., 859 F.2d 1000, 1002 (1st Cir. 1988) ("It is too elementary to warrant citation of authority that a court has an obligation to inquire sua sponte into its subject matter jurisdiction, and to proceed no further if such jurisdiction is wanting."); Pallazola v. Rucker, 797 F.2d 1116, 1128 (1st Cir. 1986) (dismissal warranted where subject-matter jurisdiction is lacking). See also Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005) (Federal courts are of limited jurisdiction, "and the requirement of subject-matter jurisdiction 'functions as a restriction on federal power.'" quoting Insurance Corp. of Ireland Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982)).

In connection with this preliminary screening, Omran's *pro se* Complaint is construed generously. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept. of Education, 209 F.3d 18, 23 (1st Cir. 2000).

Even under a broad reading, however, the Complaint is substantially deficient and is subject to dismissal for the reasons set forth below.

III.     Failure to Comply With Fed. R. Civ. P. 8

Omran's Complaint fails to comport with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Rule 8(a) requires a plaintiff to include in the complaint, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005). It must afford the defendant(s) a "[']meaningful opportunity to mount a defense,'" Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st Cir. 2004) (quoting Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)). See also Redondo-Borges v. U.S. Dept. of Housing and Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005). "In a civil rights action as in any other action . . . , the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." Educadores Puertorriqueños en Acción v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004). Although "the requirements of Rule 8(a)(2) are minimal . . .[,] 'minimal requirements are not tantamount to nonexistent requirements.'" Id. (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)).

Here, Omran combines all of his causes of action against all of the Defendants. Thus, it is unclear, for example, whether he intended to assert FTCA claims against all of the Defendants

9

or only the FBI, ICE, and the United States  Further, he makes no factual allegations stating any plausible claim against his landlady, Karen Bisson.  All that can be inferred (from the New Hampshire case and not the instant action) is that she notified federal agents of possible criminal activity by Omran.   There are no underlying facts from which any federal action could be alleged, nor any underlying facts that would convert a private citizen into a federal actor so as to be liable for constitutional violations.  Although Omran asserts that there are related <u>state</u> causes of action, he fails to identify those legal claims and set forth such claims in accordance with Rule 8.  Moreover, the Complaint fails to provide sufficient facts to support any claim of corruption and conspiracy by the Defendants pursuant to 42 U.S.C. §§ 1985, and 1986.[7]  Further, Omran fails to state a plausible constitutional claim against the ICE Director of the Office of Professional Responsibility.  All that is alleged is that Omran made a complaint and has not heard whether an investigation has been made or a decision has been rendered.

      As the United States Supreme Court has recently stated, under Rule 8, a plaintiff must

---

[7] Omran does not specify which subsection of § 1985 applies here.  Section 1985(1) of Title 42 deals with preventing an officer from performing his or her duties by force, intimidation or threats.  There is no allegation in the Complaint that would invoke this provision.  Section 1985(2) deals with obstructing justice to deter any party or witness from attending or testifying in a court proceeding.  Again, there is no allegation in the Complaint that would invoke this provision.  Section 1985(3) deals with conspiracies intended to deprive an individual or class of persons of protected rights based on "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996), <u>quoting</u> <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971).  Presumably, this is the provision sought to be invoked.  Here, however, Omran has not alleged a conspiracy for the purpose of depriving a person or class of persons equal protection of the laws.  Indeed, there are no allegations from which this Court reasonably could infer that the federal agents conspired for the purpose of denying Omran equal protection, nor is there any factual support for an allegation of discriminatory animus.  Thus, because there are no plausible § 1985 claims, there can be no plausible § 1986 claims.  42 U.S.C. § 1986 (providing liability for every person having knowledge of the wrongs conspired to be done in § 1985 who fails to prevent such wrongful actions).

plead more than a mere allegation that the defendants have harmed him. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (detailed factual allegations are not required under Rule 8, but a complaint "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." quoting Twombly, 550 U.S. at 555). See Chiang v. Skeirik, 582 F.3d 238, 244 (1st Cir. 2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (internal citation and quotation marks omitted).

In addition to the lack of underlying factual support for his claims, Omran also has failed to comply with Rule 8 because he has collectively asserted his claims against the Defendants. See Bagheri v. Galligan, 160 Fed. Appx. 4, 5, 2005 WL 3536555, *1 (1st Cir. 2005) (unpublished decision finding complaint deficient because, *inter alia*, it failed to state clearly which defendant or defendants committed each of the alleged wrongful acts; "[the district court's requirement of an amended complaint] to remedy this deficiency did not demand more than the minimum necessary to satisfy notice pleading standards."). See also Atuahene v. City of Hartford, 10 Fed. Appx. 33, *34, 2001 WL 604902, *1 (2d Cir. 2001) (unpublished decision, stating "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy this minimum standard....").

In light of the above, this action is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Concomitant with the Rule 8 pleading deficiencies, there are a number of other problems with Omran's Complaint.

IV.     Proper Venue and Personal Jurisdiction

In his Complaint, Omran alleges that venue is proper because "the actions occurred with the confines of this Court." Compl. at 2, ¶ 2. It is unclear whether Omran simply has lifted this language from his New Hampshire lawsuit into this Complaint, or whether he means the actions

11

occurred within Massachusetts.

Section 1391(b) of Title 28 provides, in part, that a civil action may be brought in: "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the jurisdiction is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated...." 28 U.S.C. § 1391(b)(1) and (2) (paragraph (3) omitted).

Here, Omran alleges actions by New Hampshire agents, as well as those in Massachusetts. Although he seeks the return of property, he fails to describe the property and state where the property is located. In any event, based on this record, this Court cannot make a *sua sponte* determination whether Venue is proper in this District. If and/or when this action is permitted to proceed further, the parties may brief the issue if appropriate.

Similarly, although Omran alleges that this Court has personal jurisdiction over all of the Defendants (including the New Hampshire agents), no determination can be made on this record. Accordingly, this Court will take no action with regard to the issue of personal jurisdiction. If and/or when this action is permitted to proceed further, the parties may brief this issue as well.

V.      Claims Pursuant to 42 U.S.C. § 1983

In his Complaint, Omran generally asserts claims pursuant to 42 U.S.C. § 1983, without specifying any factual support for such claims. Section 1983 creates a cause of action for persons who are denied a federally protected right by a person acting under color of state law. See, e.g., Baker v. McCollan, 443 U.S. 137 (1979) (constitutional deprivations); Maine v. Thiboutot, 448 U.S. 1 (1980) (statutory deprivations). "Section 1983 'is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.'" Felton v. Lincoln, 429 F. Supp. 2d 226, 238 (D. Mass. 2006) (quoting Graham v.

12

Connor, 490 U.S. 386, 393-94 (1989)); 42 U.S.C.A. § 1983. "It is well established that 'a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but [rather] must utilize 42 U.S.C. § 1983.'" Wilson v. Moreau, 440 F. Supp. 2d 81, 92 (D.R.I. 2006) (alteration in original) (quoting Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001)).

Here, Omran has alleged only action by <u>federal</u>, not state, agents. There is nothing in the Complaint from which state action can be inferred.

Accordingly, Omran's claims under § 1983 are subject to dismissal in their entirety.

VI.     <u>The FTCA Claims</u>

As noted above, Omran asserts claims under the FTCA and seeks to have his claims decided after the Bivens claims, although he provides no basis for such request. Next, he alleges that he has administratively exhausted his FTCA claims, and thus has met the jurisdictional prerequisites for filing suit in this Court. Specifically, he claims that on February 26, 2014, he made administrative presentments pursuant to 28 U.S.C. § 2675(a) to both ICE and the FBI. ICE denied the claim on May 22, 2014, while the FBI failed to make a disposition of the claim with in six months, thereby legally rendering it a denial. No copies of the presentments are attached to the Complaint.

It is unclear whether Omran is filing FTCA claims that are duplicative of those made in his litigation in New Hampshire and/or the United States Court of Federal Claims. Accordingly, this Court will direct Omran to provide further information, in a Show Cause Response, concerning his FTCA claims, indicating whether he has brought duplicative claims in any other court, and attaching a copy of his administrative presentments in connection with his other FTCA claims.

13

Notwithstanding the issue regarding presentment, there are a number of other problems with Omran's FTCA claims.

First, it is well-settled that the <u>only</u> proper Defendant in an FTCA claim for monetary damages is the United States. <u>ITT Federal Services Corp. V. Anduze Montano</u>, 474 F.3d 32, 33 (1st Cir. 2007); <u>McCloskey v. Mueller</u>, 446 F.3d 262, 265 (1st Cir. 2006). See <u>Burton v. United States</u>, 559 Fed. Appx. 780, 781 n.2 (10th Cir. 2014) (dismissing three federal employees as defendants; "The United States is the only proper defendant in an FTCA action."). Even though Omran appears to have presented his claims to the proper agencies, ICE and the FBI are not liable under the FTCA. Further, no individual federal agent acting within the scope of his employment is liable under the FTCA. Accordingly, the claims against ICE and the FBI (and any federal agent) are subject to dismissal.

Second, Omran cannot assert constitutional tort claims under the FTCA for alleged constitutional violations by federal agents. The Supreme Court has held that FTCA and <u>Bivens</u> actions are "complementary" causes of action rather than integrated causes of action. See <u>Carlson v. Green</u>, 446 U.S. 14, 20-21 (1980). This has been interpreted to mean that <u>Bivens</u> is the method by which constitutional tort claims are brought, while claims for negligence and certain intentional (but not constitutional) torts are brought under the FTCA. <u>Washington v. Drug Enforcement Admin.</u>, 183 F.3d 868, 873-74 (8th Cir. 1999) (holding there is no private cause of action under the FTCA for alleged constitutional violations by DEA agents who searched homeowner's residence, and noting that the amendment to § 2680(h) abrogated sovereign immunity with respect to six named torts, but constitutional torts were not recognizable under the FTCA). "[V]ictims of purposeful wrongdoing on the part of federal law enforcement officers can bring specified intentional tort claims under the FTCA and

14

constitutional tort claims under Bivens v. Six Unknown Agents ...." Id. at 873 (citations omitted). See 28 U.S.C. § 2680(h) (intentional tort exception for claims arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, and abuse of process). See Kennedy v. Town of Billerica, 617 F.3d 520, 533 (1st Cir. 2010); Couden v. Duffy, 446 F.3d 483, 499 (3d Cir. 2006); Davric Maine Corp. v. U.S. Postal Service, 238 F.3d 58, 64 (1st 2001). Thus, to the extent that Omran seeks to hold the United States liable under the FTCA for the alleged unconstitutional search and seizures, his claims are not cognizable and therefore are subject to dismissal.

Third, as noted in Omran's New Hampshire litigation, the waiver of sovereign immunity under the FTCA does not apply to "discretionary functions:"

> Even where the government conduct would create state tort liability in a suit against a private party, the FTCA provides that sovereign immunity is not waived if the challenged governmental action involved the exercise of discretion. 28 U.S.C. § 2680(a). This provision is known as the discretionary function exception. In general, that exception, in turn, is inapplicable if the government action is contrary to the requirements of Federal law. United States v. Gaubert, 499 U.S. 315, 324-25, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991).

Abreu v. United States, 468 F.3d 20, 23 (1st Cir. 2006). To be discretionary, the conduct must involve "an element of judgment or choice." Id. (quoting Gaubert, 499 U.S. at, 322 quoting Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)). See 28 U.S.C. § 2680(a)(discretionary function exception).

Here, Omran's FTCA claims based actions or inactions of the ICE Director of the Office of Professional Responsibility regarding Omran's internal complaint against any ICE agents, are foreclosed because investigations and disciplinary measures involve an element of judgment or choice, and because Omran has failed to set forth any mandatory federal law that would dictate the ICE Director's actions such that an exception -- to the discretionary function exception –

would apply. See Gaubert, 499 U.S. at 324.

Finally, the United States Supreme Court has held that the United States has not waived its sovereign immunity for claims against federal agents with respect to property claims. In other words, § 2680(c) (which carves out exceptions to the waiver of sovereign immunity for torts committed by federal employees), does not apply to claims arising out of the detention of property by "any officer of customs or excise or any other law enforcement officer."[8] Ali v. Federal Bureau of Prisons, 552 U.S. 214, 215 (2008). In Ali, an inmate filed an FTCA claim against the Federal Bureau of Prisons ("BOP"), its Director, and a warden, alleging mishandling of his belongings during transfer to another prison. The Supreme Court affirmed the dismissal of

---

[8]Section 2680(c) provides:

The provisions of this chapter and section 1346(b) of this title shall not apply to

(c) Any claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer, except that the provisions of this chapter and section 1346 (b) of this title apply to any claim based on injury or loss of goods, merchandise, or other property, while in the possession of any officer of customs or excise or any other law enforcement officer, if—
(1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon conviction of a criminal offense;
(2) the interest of the claimant was not forfeited;
(3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and
(4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

28 U.S.C. § 2680(c). This means that the waiver of sovereign immunity under the FTCA applies only to property seized by the government for purposes of forfeiture. Smoke Shop, LLC v. United States, 761 F.3d 779 (7th Cir. Aug. 4, 2014). Here, Omran has not indicated his property was taken from him for purposes of forfeiture.

the prisoner's case on the grounds that the BOP officers who lost the inmate's personal property were "law enforcement officers" as used in § 2680(c). In reaching the conclusion that the statute applied to "any" law enforcement officer, the Court noted that this provision forecloses lawsuits against the United States for "unlawful detention of property " by any law enforcement officers. Ali, 552 U.S. at 228.

In light of all of the above, this Court will afford Omran an opportunity to demonstrate good cause why all of his FTCA claims should not be dismissed.

VII.    Bivens Claims

As noted above, Omran does not separate his Bivens claims as to each individual Defendant in accordance with Rule 8. While on a broad reading, this Court considers that he may sufficiently have stated constitutional claims against some of the Defendants based on the alleged illegal search and seizures and disclosure of private information, he has not set forth any facts upon which an equal protection claim reasonably may be inferred.[9] Nevertheless, it would be unfair to the Defendants to have to respond to the Complaint in its present form, given all of the other problems noted herein.[10]

---

[9]As noted herein, the New Hampshire Court found the same lack of supporting underlying facts to establish an equal protection claim.

[10]Moreover, to the extent that Omran asserts Bivens claims against the FBI and ICE, his claims are not cognizable because a Bivens action may not be brought against a federal agency. F.D.I.C. v. Meyer, 510 U.S. 471, 486 (1994). Further, To the extent that he is seeking to hold these Defendants liable under Bivens for the actions of its employees, such claims also are not cognizable under Bivens because *respondeat superior* is not a viable theory of liability. See Estate of Rosenberg by Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). Finally, Omran cannot state a viable Bivens claim against the United States itself because the United States has sovereign immunity. The doctrine of sovereign immunity provides that the United States (including its various branches, departments, and agencies) enjoys immunity from suit except in those instances in which it has expressly consented to be sued. See Meyer, 510 U.S. at 475; United States v. Testan, 424 U.S. 392, 399 (1976).

Further, Omran sets forth no facts from which a <u>Bivens</u> claim could be invoked against his landlady, Karen Bisson, a private citizen and not a federal actor. Defendant Bisson does not become a federal actor simply by virtue of her alleged wrongful reporting about Omran's computer activity to the Government.

Finally, with respect to the ICE Director of the Office of Professional Responsibility, Omran has not alleged any facts or conduct that would have constitutional implications under <u>Bivens</u>.

## VIII. <u>The Motion to Amend the Civil Complaint</u>

Omran's proposed Amended Complaint, seeking to add two additional Defendants, suffers from the same impediments as set forth in this Memorandum and Order. Although he briefly states the alleged wrongdoing by Nicole Roy, he fails to give the "when, where, and why" information necessary to set forth a claim under Rule 8. It is also unclear whether he is seeking to assert a <u>Bivens</u> claim and/or an FTCA claim.

Similarly, he does not state the basis for liability for the United States Marshal Service itself pursuant to Rule 8. Additionally, the United States Marshal Service is entitled to sovereign immunity from a damages suit. <u>Meyer,</u> 510 U.S. at 475. Further, as noted above, there is no *respondeat superior* liability under <u>Bivens</u>. <u>Estate of Rosenberg by Rosenberg</u>, 56 F.3d at 37.

Next, with respect to any FTCA claim against either the United States Marshal Service or Nicole Roy, Omran's claims are not cognizable because the <u>only</u> proper defendant in an FTCA claim is the United States. Further, there is no allegation in the proposed Amended Complaint that Omran has administratively exhausted his claim with the United States Marshal Service. The failure to do so before filing suit against the United States Marshal Service is fatal to his claims asserted in this action. <u>See</u> 28 U.S.C. § 2675(a). The Court does not have jurisdiction

over his FTCA claims where none existed at the time the action was filed. See McNeil v. United States, 508 U.S. 106, 111-12 (1993) ("The most natural reading of the [FTCA] statute indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process. Every premature filing of an action under the FTCA imposes some burden on the judicial system and on the Department of Justice which must assume the defense of such actions...."); Barrett ex rel. Estate of Barrett v. United States, 462 F.3d 28, 36-38 (1st Cir. 2006) (where plaintiff exhausted administrative remedies after filing action in court but before defendants were served, court was without jurisdiction over the FTCA claim; § 2675(a) provides that an FTCA action may not be "instituted" unless the claimant first presents the claim to the appropriate federal agency, and the claim is finally denied).

Based on the above, this Court finds that Omran's Motion to Amend Civil Complaint (Docket No. 10) is subject to dismissal. Accordingly, the Motion to Amend Civil Complaint (Docker No. 10) is <u>DENIED</u>; however, Omran will be afforded an opportunity to file an Amended Complaint pursuant to the parameters set forth below.

IX. <u>Order to Show Cause or Amend Complaint</u>

In light of all of the above, this action will be dismissed within 42 days of the date of this Memorandum and Order unless Omran files an Amended Complaint curing the pleading deficiencies and setting forth plausible claims in accordance with Fed. R. Civ. P. 8 (expressly setting forth the name of each Defendant, the separate cause of action asserted against each Defendant, and a concise statement of the factual basis supporting each cause of action). Omran should not collectively assert his causes of action against all of the Defendants.

Additionally, Omran shall submit a "Show Cause Response" demonstrating good cause why this action should not be dismissed based on the various legal impediments discussed herein

19

concerning the lack of §§ 1983, 1985, and 1986 liability and the barriers to his FTCA and <u>Bivens</u> claims. Any Show Cause Response shall not exceed seven (7) double-spaced pages.

Failure to comply with the directives contained in this Memorandum and Order may result in a dismissal of this action.

No summonses shall issue pending further Order of the Court.

## CONCLUSION

Based on the foregoing, it is hereby Ordered that:

1. Plaintiff's Motion for Leave to Proceed *in forma pauperis* is <u>ALLOWED</u> and the filing fee is assessed pursuant to 28 U.S.C. § 1915(b);

2. Plaintiff's Motion to Amend the Civil Complaint (Docket No. 19) is <u>DENIED</u> in view of this Memorandum and Order;

3. Within 42 days of the date of this Memorandum and Order, Plaintiff shall file an Amended Complaint curing the pleading deficiencies in accordance with Rule 8;

4. Within 42 days of the date of this Memorandum and Order, Plaintiff shall demonstrate good cause in writing why this action should not be dismissed for the reasons stated herein; and

5. No summonses shall issue pending further Order of the Court.

SO ORDERED.

/s/ Leo T. Sorokin
LEO T. SOROKIN
UNITED STATES DISTRICT JUDGE

DATED: March 31, 2015