UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MOHAMMED AHMED HASSAN ABDALLAH OMRAN,
        Plaintiff,

    v.                                                CIVIL ACTION NO. 14-13881-LTS

UNITED STATES OF AMERICA, ET AL.,
        Defendants.

MEMORANDUM AND ORDER

SOROKIN, U.S.D.J.

BACKGROUND

Plaintiff Mohammed Ahmed Hassan Abdallah Omran ("Omran") filed this action under, inter alia, 42 U.S.C. §§ 1985 and 1986, Bivens[1] and the Federal Tort Claims Act ("FTCA"), against a number of federal actors, as well as his landlady, a private citizen. This Court detailed the background of this case in the Memorandum and Order (Docket No. 11) issued on March 31, 2015. To sum: on August 30, 2012, Omran was arrested by ICE agents and later indicted for two counts of False Claim of Citizenship. He alleges that on September 24, 2012, Defendant ICE Agent Bleezarde and Defendant FBI agent Galway visited his home in Methuen, Massachusetts, and conducted a warrantless search and seizure of his personal, password-protected, computer. The next day, these two agents visited a house in New Durham, New Hampshire that belonged to one of Omran's friends. There, they conducted another warrantless search and seizure. Thereafter, ICE Officer Bleezarde applied for a search warrant in order to bypass Omran's computer password and search the content of his computer. Omran alleges the search warrant

---

[1]Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

was issued based on fabricated statements by Officer Bleezarde.

Next, Omran claims that Defendant ICE Officer Clothier searched the contents of his computer, exceeding the scope of authority provided by the search warrant, thereby violating Omran's privacy rights.

On March 11, 2013, the Indictment was dismissed, and Omran was transferred to the Suffolk County House of Correction in Boston, Massachusetts. He contends that a friend delivered a suitcase to the ICE Regional Office in Burlington, Massachusetts, which contained Omran's important documents, clothes, wallet and other personal items. He also claims that the ICE property officer (unidentified) searched the contents of the suitcase and seized some of the documents without a search warrant, including his driver's license and social security card. Thereafter, Omran was transferred to different detention facilities outside of Massachusetts. He claims that he has made several requests from ICE's Regional Office in Burlington concerning his missing documents. He received some of the documents, but other documents still are missing. Additionally, Omran filed an internal complaint against Officer Bleezarde with the Office of Professional Responsibility of ICE, but was unaware of any action taken on his complaint.

In the prior Memorandum and Order, this Court granted Omran's *in forma pauperis* motion and directed him to file both an Amended Complaint and a Show Cause Response demonstrating why this action should not be dismissed based on the numerous legal deficiencies noted in the Memorandum and Order. These deficiencies included the failure to set forth plausible claims in accordance with Rule 8 of the Federal Rules of Civil Procedure, because, *inter alia*: (1) it was unclear whether Omran intended to assert FTCA claims against all of the federal Defendants; (2) he made no factual allegations supporting a claim against his landlady,

Karen Bisson, a private citizen; (3) he failed to state the "when, where, and why" information necessary to set forth a claim against Defendant Nicole Roy; (4) he failed to set forth a basis for any state causes of action; (5) he failed to set forth underlying facts to support claims of corruption and conspiracy; and (6) he failed to state the basis for liability for the United States Marshal Service. Further, the United States Marshal Service was entitled to sovereign immunity from an FTCA damages suit, and could not be held liable under Bivens on a *respondeat superior* theory.[2]

Apart from the Rule 8 pleading deficiencies, this Court questioned whether this judicial district was the proper venue for this action in view of New Hampshire litigation, and also questioned whether there was personal jurisdiction over some of the Defendants. The Court noted that if this action were permitted to proceed, the issues of venue and personal jurisdiction were matters that may be briefed by the parties.

Next, this Court noted that Omran failed to set forth plausible claims under 42 U.S.C. § 1983 because only federal action, not state action, was alleged. With respect to the FTCA claims, this Court noted the various problems in that: (1) it was unclear whether his claims were duplicative of those in his New Hampshire litigation or those in the United States Court of Federal Claims; (2) it was unclear whether he had administratively exhausted all of his FTCA claims; (3) the only proper Defendant in an FTCA action is the United States, not the federal agencies; (4) Omran could not assert constitutional tort claims against the individual Defendants under the FTCA (rather, those claims may asserted under Bivens); (5) the waiver of sovereign

---

[2] This Court did, however, consider that Omran may have stated plausible constitutional claims against some of the Defendants based on the alleged illegal search and seizures and disclosure of private information. He did not, however, set forth any facts upon which an equal protection claim reasonably could be inferred.

immunity under the FTCA did not apply to "discretionary functions" such as the alleged actions or inactions of the ICE Director of the Office of Professional Responsibility regarding Omran's internal complaint against any ICE agents; and (6) there was an exception to the FTCA waiver of sovereign immunity for claims arising out of the detention of property by "any officer of customs or excise or any other law enforcement officer." Ali v. Federal Bureau of Prisons, 552 U.S. 214, 215 (2008).

On April 27, 2015, Omran filed an Amended Complaint (Docket No. 14) and a Response to the Order to Show Cause (Docket No. 15).

## DISCUSSION

I. The Show Cause Response

In his Show Cause Response, Omran first argues that, with respect to his claims pursuant to 42 U.S.C. § 1985 and § 1986, Officers Bleezarde and Galway conspired among themselves to conduct a warrantless search and seizure. Thereafter, Officer Clothier conspired with Officer Bleezarde and Galway to view the contents of his computer beyond the scope of authority. He alleges these actions were based on his ethnicity and national origin. Next, Omran claims Officer Nicole Roy, of the United States Marshal Service, conspired with the government computer expert to access his seized computer, depriving him of his Fourth and Fifth Amendment rights. Again, he alleges this was based only on his racial ethnicity and national origin. He asserts that there is no other reason the Defendants would have acted as they did, except for his ethnicity and national origin.

With respect to his Bivens claims, he alleges all the individual federal officers violated a clearly established right (the Fourth and Fifth Amendments) by the unlawful search and seizures on September 24, 2012 and September 25, 2012, except that Omran again asserts the Director of

4

the Office of Professional Responsibility violated his constitutional rights by not investigating his complaint.

Next, with respect to the FTCA claims, Omran claims that he made administrative presentments to ICE, based on the wrongful acts of its employees (Officers Bleezarde and Clothier, Property Custodian Clothier, and the Director of the Office of Professional Responsibility). He also contends that he made a presentment to the FBI and to the United States Marshal Service (for the wrongful acts of Nicole Roy). He submits that the FTCA claims are viable because under he asserts Massachusetts state law claims of invasion of privacy, negligence, discrimination, damage and loss of property, unreasonable search and seizure, and abuse of process by the individual federal Defendants.[3] Show Cause Response (Docket No. 15 at 4). Omran further contends that the discretionary function exception does not apply in this case.

II.     The Amended Complaint

In Omran's Amended Complaint, he identifies the same individual Defendants, and correctly substitutes the United States as a Defendant in connection with his FTCA claims, in lieu of the federal agencies (*i.e.*, FBI, ICE, United States Marshal Service). Additionally, he essentially asserts the same claims as contained in his original Complaint, including his allegations with respect to the warrantless searches and seizures, the fabricated statements in support of a search warrant for his computer, the search of his computer beyond the scope of the warrant, and the wrongful retention of his property. He also asserts that he has exhausted his

---

[3]Omran also asserts the same violations under New Hampshire state law with respect to Defendant Clothier. Further, he claims the same violations under Louisiana state law against Officer Roy.

administrative remedies pursuant to the FTCA's presentment requirements.

With respect to his landlady, Karen Bisson, Omran claims that: "The truth is Karen Bisson never accessed the computer and only allowed the Officers to conduct the warrantless search and seizure after they showed up without notice in her house because they threatened her." Am. Compl. (Docket No. 14 at 4, ¶ 13). He claims these officers conspired among themselves and with Karen Bisson to violate his constitutional rights, and contends that she had no authority to allow federal officers to search and seize his property. He contends that this establishes cognizable claims against her under 42 U.S.C. § 1985 and § 1986.[4]

III.   The Court Will Permit Claims to Proceed Against the Identified Federal Defendants and the United States

While the Show Cause Response and Amended Complaint have not wholly resolved the problems previously noted in the Memorandum and Order (Docket No. 11), this Court will permit this case to proceed at this time as to the individual federal Defendants who have been identified, and as to the United States, since it is necessary to have these Defendants respond to the allegations in order to assess adequately the merits of Omran's claims. At this point, there is minimally sufficient notice of the claims, although the underlying factual support as to conspiracies and discriminatory motivation is sparse, particularly where there is an alleged negative inference that the federal officers would not have acted the way they did, but for racial

---

[4]In the prior Memorandum and Order, this Court presumed that Omran was asserting a claim under 42 U.S.C. § 1985(3), which deals with conspiracies intended to deprive an individual or class of persons of protected rights based on "'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'" Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996), quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). This Court noted that there were no factual allegations of discriminatory animus alleged that would imply equal protection violations. Thus, there were no plausible § 1986 claims. 42 U.S.C. § 1986 (providing liability for every person having knowledge of the wrongs conspired to be done in § 1985 who fails to prevent such wrongful actions).

and national origin discrimination. In any event, the record needs further development.

Moreover, this Court still has doubts concerning proper venue and personal jurisdiction, but, because these are affirmative defenses that may be waived, the parties should have the opportunity to address these issues as well, if appropriate.

Further, this Court will also permit Omran's FTCA claims against the United States to proceed at this time insofar as he has alleged to have made proper presentment before filing suit.

Finally, the operative pleading in this action shall be the Amended Complaint (Docket No. 14). The Clerk is directed to correct the docket to terminate the FBI and ICE as Defendants, and add as a Defendant "John Doe, the custodian of plaintiff's property after it was seized on September 24 and 25, 2012."

IV.     The Claims Against Defendant Karen Bisson Will Be Dismissed

Notwithstanding that this action is being permitted to proceed against the federal Defendants, this Court will not, however, permit this action to proceed against Defendant Karen Bisson, Omran's landlady for the reasons set forth below.

     A.     Failure to State Plausible Bivens Claims

Omran makes only a general allegation that his landlady conspired with federal agents to violate his constitutional rights; however, he has not alleged any facts (or facts from which a reasonable inference could be inferred) that Karen Bisson, a private citizen, is a federal actor subject to Bivens liability, and it is unclear from the Amended Complaint whether Omran intended to assert such a claim against her.[5] Thus, he fails to state a plausible Bivens claim.

---

[5] See Berman v. Turecki, 885 F. Supp. 528, 536-37 (S.D.N.Y. 1995) (in suit by ex-wife's boyfriend against ex-husband and FBI agent based on a claim that the defendants conspired to violate his civil rights in obtaining arrest and search warrants based on a report of a blackmailing scheme, the Court held that absent any basis for a finding that ex-husband was acting under color

B. <u>Failure to State Plausible Claims Under 42 U.S.C. Sections 1985(3) and 1986</u>

Next, with respect to any claims against Karen Bisson for violating his protected rights pursuant to 42 U.S.C. § 1985(3), Omran fails to set forth any facts (or reasonable inferences therefrom) to support the bald allegation that his landlady's actions were motivated by his race or national origin. Further, he fails to set forth set forth any facts whatsoever that would raise an inference that his landlady entered into a conspiracy with federal agents, let alone any facts from which it reasonably could be inferred that a conspiracy was formed based on racial or class-based animus. "A civil rights conspiracy as commonly defined is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.'" <u>Earle v. Benoit</u>, 850 F.2d 836, 844 (1st Cir.1988) (internal quotations omitted)).

Here, Omran claims that his landlady was coerced by federal agents into cooperating with them. Am. Compl. (Docket No. 14 at 4, ¶ 13). This allegation of coercion completely undermines his conspiracy theory of liability, as it evidences the lack of a common understanding among the parties. Further, Omran's allegation that she did not have authority to allow federal officers to search and seize his property, and that she could not have seen anything on his computer because it was password protected, does not permit an inference of conspiracy.

---

of federal law in reporting alleged blackmailing scheme to federal agents, private citizen could not be held liable under <u>Bivens</u>). <u>See</u> <u>also</u> <u>Upshaw v. Andrade</u>, 2012 WL 996783 (D. Mass. 2012) <u>citing</u> <u>Brown v. Philip Morris, Inc.</u>, 250 F.3d 789, 801 (3rd Cir.2001) (analyzing whether private party was federal actor within meaning of <u>Bivens</u> by applying three part test: (1) public function test; (2) close nexus test; and (3) symbiotic relationship test").

Thus, because there are no plausible claims stated under 42 U.S.C. § 1985, there can be no violation of § 1986,

Since this Court already has permitted Omran an opportunity to set forth plausible federal claims against this Defendan, there is no need to permit further opportunities to Omran to amend the Amended Complaint with respect to Karen Bisson. Based on the facts and circumstances alleged, this Court considers this simply would be an exercise in futility.

Accordingly, all federal claims against Karen Bisson will be DISMISSED *sua sponte*.

C. Declination to Exercise Supplemental Jurisdiction

In light of the above, to the extent that Omran asserts any claims against Karen Bisson based on state law (and he has not clearly asserted any state-law claims), this Court DECLINES to exercise supplemental jurisdiction over such claims, because there are no viable federal claims, and it would be unfair to her to have to participate in this lawsuit. See Ramos-Echevarria v. Pichis, Inc., 659 F.3d 182, 189 (1st Cir. 2011) (stating that: "When a plaintiff's anchor claim is a federal cause of action and the court unfavorably disposes of the plaintiff's federal claim at the early stages of a suit, well before trial, the court generally dismisses any supplemental state-law claims without prejudice.") citing Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir.1995).

Accordingly, any state-law claims against Karen Bisson (if any), are DISMISSED without prejudice to asserting them in another forum, if he is permitted to do so.

V. Issuance of Summonses and Service of Process

In light of the above, the Clerk shall issue summonses as to Defendants Phillip Bleezarde, Kevin Clothier, Brendan Galway, Dan Catchins, Nicole Roy, the Director of the Office of Professional Responsibility, and the United States.

9

No summons shall issue with respect to Karen Bisson or the unidentified custodian of Omran's property that allegedly was seized on September 24 and 25, 2012. Unless ordered otherwise, if and/or when Omran discovers the identity of this individual, he may move to amend the Amended Complaint to substitute the proper name of the Defendant, and he may request a summons issue at that time.

Further, because Omran is proceeding *in forma pauperis*, this Court will direct the United States Marshal Service to effect service of process if Omran wishes to have service made without prepayment of fees and costs.[6] Notwithstanding the directive to the United States Marshal Service, Omran is advised that it remains his responsibility to ensure that the United States Marshal Service (or any other process server) has all necessary paperwork and information (*e.g.*, name and address of each Defendant) to effect service.[7]

## VI. Declination to Appoint Counsel

In anticipation that Omran may seek appointment of *pro bono* counsel in this case, this Court has considered whether such appointment would be warranted. Under 28 U.S.C. § 1915(e)(1), the court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). A civil plaintiff, however, does not have a constitutional right to free counsel. DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991). In order to qualify for appointment of counsel, a party must be indigent and exceptional circumstances must exist such

---

[6] It is noted that Nicole Roy is alleged to be an employee of the United States Marshal Service in Louisiana; however, should Omran elect to have the United States Marshal Service effect service, he may do so, or he may arrange for some other process server at his own cost.

[7] Along with the summonses, the Clerk shall provide the standard instructions for service by the United States Marshal Service, the USM 285 forms, and instructions for service on United States employees and the United States.

that denial of counsel will result in fundamental unfairness impinging on the party's due process rights. Id. To determine whether exceptional circumstances are present in a case, the court must examine the total situation, focusing on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent him or herself. Id. at 24.

At this juncture, this Court cannot find that exceptional circumstances exist that would warrant appointment of *pro bono* counsel in this case. Omran appears to be proficient in the English language and, while unskilled in the law, he nevertheless is familiar with legal terms and concepts, as well as legal procedures. While it may be difficult for Omran to proceed *pro se* because he is an indigent prisoner, this is not a unique circumstance. Moreover, this Court must balance the merits of his claims with the expenditure of scarce *pro bono* resources. In view of the dubious merits based on the current record, use of such resources does not appear justifiable at his point.

Accordingly, this Court DECLINES to appoint *pro bono* counsel at this time. If and/or when the Defendants have filed responses to the Amended Complaint, Omran may file a motion for appointment of counsel provided he demonstrate exceptional circumstances in view of the Defendants' responses.

## CONCLUSION

Based on the foregoing, it is hereby Ordered that:

1. All federal claims against Defendant Karen Bisson are DISMISSED;
2. The Court declines to exercise supplemental jurisdiction over any state-law claims

against Karen Bisson (if any); and they are **DISMISSED** without prejudice;[8]

3. The Clerk shall issue summonses as to Defendants: (1) Phillip Bleezarde; (2) Kevin Clothier; (3) Brendan Galway; (4) Dan Catchins; (5) Nicole Roy; (6) the Director of the Office of Professional Responsibility; and (7) the United States.

4. No summons shall issue with respect to Karen Bisson or the unidentified custodian of Omran's seized property;

5. The Clerk shall send the summonses, a copy of the Amended Complaint, and this Memorandum and Order to the Plaintiff, who must thereafter serve the Defendants in accordance with Federal Rule of Civil Procedure 4(m). The Plaintiff may elect to have service made by the United States Marshal Service. If directed by the Plaintiff to do so, the United States Marshal shall serve the summonses, Amended Complaint, and this Memorandum and Order upon the Defendants, in the manner directed by the Plaintiff, with all costs of service to be advanced by the United States Marshal Service;

6. Notwithstanding Fed. R. Civ. P. 4(m) and Local Rule 4.1, the Plaintiff shall have 120 days from the date of this Memorandum and Order to complete service;

7. The Court **DECLINES** to appoint *pro bono* counsel at this time; and

8. In view of the Amended Complaint (Docket No. 14) (the operative pleading in this action), the Clerk shall correct the docket to terminate the FBI and ICE as Defendants, and add as a Defendant "John Doe, the custodian of plaintiff's property after it was seized on September 24 and 25, 2012."

SO ORDERED.  /s/ Leo T. Sorokin  
LEO T. SOROKIN  
UNITED STATES DISTRICT JUDGE

DATED: May 17, 2015

---

[8]The dismissal of the federal and state claims is not intended as a separate and final judgment at this time.