UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

—————————————————————
                                                    )
MOHAMMED AHMED HASSAN AB OMRAN,    )
                                                    )
                    Plaintiff,                      )
                                                    )
v.                                                  )          Civil Action No. 14-13881-LTS
                                                    )
UNITED STATES OF AMERICA, et al.,                   )
                                                    )
                    Defendants.                     )
—————————————————————      )

REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO
DISMISS AND PLAINTIFF'S MOTION TO AMEND THE COMPLAINT
[Docket Nos. 40, 44]

June 1, 2016

Boal, M.J.

Pro se plaintiff Mohammed Ahmed Hassan Abdallah Omran ("Omran") filed this action

under, inter alia, Bivens,[1] the Federal Tort Claims Act ("FTCA"), and 42 U.S.C. §§ 1985 and

1986, against the United States and a number of federal actors, as well as Karen Bisson, his

landlady and a private citizen.  Docket No. 14.  Defendants United States, Philip Bleezarde,

Kevin Clothier, Brendan Galway, Dan Catchins, Nicole Roy, and the ICE Director of the Office

of Professional Responsibility (collectively, the "Defendants") have moved to dismiss the

Amended Complaint.[2]  Docket No. 40.[3]  In addition to responding to the motion to dismiss,

---

[1] An action for damages against federal officials in their individual capacity pursuant for
violations of constitutional rights is commonly referred to as a Bivens claim.  See Bivens v. Six
Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 397 (1971).

[2] As detailed below, the District Court dismissed all claims against Bisson on May 17, 2015.
Docket No. 17.

[3] On January 12, 2016, the District Court referred this case to the undersigned for full pretrial
management, including report and recommendation on dispositive motions.  Docket No. 48.

Omran has filed a motion to amend the complaint, which the Defendants oppose.  Docket No. 44.  For the following reasons, the Court recommends that the District Judge assigned to this case grant the Defendants' motion to dismiss and deny Omran's motion to amend his Complaint.

I.      PROCEDURAL BACKGROUND

On October 14, 2014, Omran filed the original Complaint in this case.  Docket No. 1.  He named as defendants (1) Karen Bisson, his landlady; (2) Philip Bleezarde, an agent with the Bureau of Immigration and Customs Enforcement ("ICE") stationed in New Hampshire; (3) Kevin Clothier, an ICE agent stationed in New Hampshire; (4) Brendan Galway, an agent employed by the Federal Bureau of Investigation ("FBI") stationed in New Hampshire; (5) Dan Catchins, an ICE agent and property officer stationed in Massachusetts; (6) the FBI; (7) ICE; and (8) the United States of America.  In addition, Omran named two other defendants of unknown identity: (1) the person responsible for the custody of Omran's computer after seizure; and (2) the ICE Director of the Office of Professional Responsibility (the "ICE Director").  Omran alleged that all of the federal defendants acted in their official and individual capacities and were not entitled to qualified immunity.

On March 30, 2015, Omran filed a motion to amend the Complaint.  Docket No. 10. On March 31, 2015, the District Court granted Omran's motion to proceed in forma pauperis and directed him to file both an amended complaint and a show cause response demonstrating why this action should not be dismissed based on numerous legal deficiencies noted in the District Court's memorandum and order.  Docket No. 11.  These deficiencies included the failure to set forth plausible claims in accordance with Rule 8 of the Federal Rules of Civil Procedure.  Id. at 9-11.  The Court also questioned whether the District of Massachusetts was the proper venue for

this action in view of related New Hampshire litigation, and also questioned whether there was

personal jurisdiction over some of the defendants.  Id. at 11-12.

In addition, the Court noted that Omran had failed to set a plausible claim under 42

U.S.C. § 1983 because only federal action, not state action, was alleged.  Id. at 12-13.  The Court

also noted several deficiencies with respect to Omran's FTCA claims including that it was

unclear whether his claims were duplicative of those in New Hampshire litigation and it was

unclear whether Omran had administratively exhausted all of his FTCA claims.  Id. at 13-17.

With respect to Omran's proposed amended complaint, the District Court found that it

suffered from the same impediments as the original complaint.  Id. at 18-19.  The District Court

therefore denied Omran's motion to amend the complaint.  Id.

On April 27, 2015, Omran filed an Amended Complaint and a Response to the Order to

Show Cause.  Docket Nos. 14, 15.  The Amended Complaint named the same individual

defendants and correctly substituted the United States, in lieu of the ICE and the FBI, as a

defendant in connection with the FTCA claims.  The Amended Complaint essentially asserted

the same claims as contained in the original Complaint.

On May 17, 2015, the District Court issued a Memorandum and Order regarding

Omran's Amended Complaint and Response to the Order to Show Cause.  Docket No. 17.  The

District Court dismissed the claims against Bisson.  Id. at 7-9.  It found that Omran had failed to

state any federal claims against Bisson.  Id.  The District Court also declined to exercise

supplemental jurisdiction over any state law claims against Bisson, to the extent that Omran had

intended to bring any such claims.  Id. at 9.

The District Court allowed the case to proceed as to defendants Bleezarde, Clothier,

Galway, Catchins, Roy, the ICE Director and the United States.  Id. at 6-7.  Summons issued as

to these defendants.  Id. at 9, 12.  The District Court also directed the Clerk to correct the docket

to terminate the FBI and ICE as defendants, and add as a defendant "John Doe, the custodian of

plaintiff's property after it was seized on September 24 and 25, 2012."  Id. at 7.  However, no

summons was issued with respect to John Doe.  Id. at 10.  The District Court stated that "if

and/or when Omran discovers the identity of this individual, he may move to amend the

Amended Complaint to substitute the proper name of the Defendant, and he may request a

summons issue at that time."  Id.

The Defendants filed the instant motion to dismiss on October 2, 2015.  Docket No. 40.

On October 19, 2015, Omran filed an opposition.  Docket No. 43.

On December 3, 2015, Omran filed a motion to amend the Complaint.  Docket No. 44.

The Defendants filed an opposition on December 21, 2015.  Docket No. 46.

On January 7, 2016, Omran filed a motion to supplement his opposition to Defendants'

motion to dismiss.  Docket No. 47.  The Defendants filed an opposition on January 15, 2016.

Docket No. 49.

On April 25, 2016, Omran filed a motion for a temporary restraining order and

preliminary injunction.  Docket No. 53.  The District Court denied the motion on April 29, 2016.

Docket No. 57.[4]

---

[4] On May 20, 2016, Omran filed a motion to supplement his motion for a temporary restraining
order and a preliminary injunction.  Docket No. 59.

II.    FACTS[5]

On August 30, 2012, Omran was arrested by ICE agents at his work in Barrington, New Hampshire.  Amended Complaint ("AC") at ¶ 10.  Omran was detained at Strafford County Department of Correction in Dover, New Hampshire.  Id.  On September 5, 2012, Omran was indicted on two counts of "false claim of citizenship."  Id.

On September 24, 2012, ICE agent Bleezarde and FBI agent Galway visited Omran's residence in Methuen, Massachusetts.  AC ¶¶ 2, 4, 11.  Bleezarde and Galway allegedly threatened and coerced Bisson, Omran's landlady, into allowing them to conduct a warrantless search and seizure.  Id.  Among the seized items was Omran's computer, which was protected by a password.  Id.

On September 25, 2012, Bleezarde and Galway visited a house in New Durham, New Hampshire where Omran had stored some of his personal property.  AC ¶ 12.  The agents coerced the occupant of the house and conducted a warrantless search and seizure.  Id.  The agents opened closed boxes and locked suitcases, and seized some of Omran's personal property.  Id.

On October 10, 2012, Bleezarde applied for a search warrant to bypass the computer password and search the contents of the computer.  AC ¶ 13.  Omran alleges that Bleezarde lied in the search warrant affidavit.  Id.  Bleezarde claimed that while Omran was incarcerated, Bisson had accessed Omran's computer and noticed suspicious digital files which led her to

---

[5] Because this case is presently before the Court on a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the Amended Complaint and drawing all reasonable inferences in Omran's favor.  See Morales-Tañon v. P.R. Elec. Power Auth., 524 F.3d 15, 17 (1st Cir. 2008).

report the incident to the Department of Homeland Security.  Id.  Omran alleges that in reality, Bisson had never accessed the computer and only allowed the officers to conduct the warrantless search and seizure after they showed up without notice in her house because they threatened her. Id.

Omran also alleges that the search warrant was issued based on Bleezarde's fabricated statements.  AC ¶ 14.  According to Omran, Clothier searched Omran's computer and he exceeded the authority given to him by the warrant.  Id.

Omran claims that John Doe allowed other unauthorized individuals to view contents that were not authorized to be viewed according to the issued search warrant.  AC ¶ 15.  Omran alleges that Doe "had a duty and obligation to follow the law of the United States which guaranteed the plaintiff his right against unreasonable search.  By violating this law, [Doe] had neglected to do his duties which was mandatory and not discretionary."  Id.

One of Omran's friends delivered a suitcase to the ICE regional field office in Burlington, Massachusetts, where the property officer, Catchins, searched the contents of the suitcase and seized some of Omran's documents.  AC ¶ 16.  Among the seized items were Omran's social security card and driver's license.  Id.  Some of the property was never returned to Omran.  Id.

Omran filed a complaint against Bleezarde with the ICE Office of Professional Responsibility in Washington, D.C.  AC ¶ 17.  Omran's complaint was never investigated and no disciplinary action was taken against Bleezarde.  Id.  Omran alleges that the ICE Director "neglected to do his job in investigating the complaint and treated the plaintiff differently than he treats other complainants only because of the plaintiff's racial ethnicity."  Id.  He alleges that the Director violated his due process and equal protection rights.  Id.

6

Omran was transferred to the custody of the U.S. Marshals Service on March 21, 2014. AC ¶ 18.  Among Omran's property was the computer that was seized illegally by Officer Bleezarde on September 24, 2012.  Id.  U.S. Marshal Nicole Roy asked Omran to provide her with an address to ship his property to.  Id.  Roy made Omran sign a document that stated he received his property.  Id.  Omran alleges that the document and signature were invalid because it was signed under duress and threat of violence.  Id.  Before shipping the computer to Omran's address, Roy allowed a computer expert to access Omran's computer and to tamper with the hard drive to modify the dates of access to the computer to match the fabricated statements of Bleezarde in his affidavit in support of the search warrant.  Id.

Omran alleges that Bleezarde, Galway, Clothier and Catchins' actions violated Omran's Fourth and Fifth Amendment rights against unreasonable search and seizure, right to due process and equal protection of the law.  AC ¶¶ 20-23.  He also alleges that these defendants conspired with each other and Bisson to deprive Omran of his constitutional rights in violation of 42 U.S.C. §§ 1985 and 1986.  Id.  In addition, he alleges that these defendants' actions constitute abuse of process, invasion of privacy, discrimination, unreasonable search and seizure, damage, and loss of property, and emotional distress under Massachusetts law.  Id.  He further alleges that they were acting "under color of federal law" and their actions gave rise to a Bivens claim.  Id. Omran asserts similar claims against Roy, except that he does not seem to assert an abuse of process claim against her and states that his state law causes of action arise under Louisiana law. AC ¶ 24.

With respect to the ICE Director, Omran argues that his actions violated the Equal Protection and Due Process Clauses of the Fifth Amendment.  AC ¶ 26.  He also appears to assert a claim for emotional distress under state law.  Id.

Finally, Omran brings claims against the United States under the FTCA.  AC ¶ 27.  It is not entirely clear, but he also appears to be asserting a <u>Bivens</u> claims against the United States. <u>Id.</u>

Omran requests the following relief: (1) a declaratory judgment that the Defendants violated his constitutional rights; (2) an injunction ordering the Defendants to return all illegally seized property and to destroy all copies made of Omran's digital storage media and his computer's hard disc, in any form, in a way that does not permit future recovery of such data; (3) an "injunction" ordering the Defendants to pay all court fees; (4) an "injunction" ordering the Defendants to pay all expert witnesses' fees; and (5) a judgment against Defendants in the sum of $10 million as compensatory and punitive damages.  AC at p. 13.

III.    <u>ANALYSIS</u>

Defendants seeks dismissal of the instant action on two primary grounds: (1) lack of subject matter jurisdiction pursuant to Rule 12(b)(1); and (2) failure to state a claim pursuant to Rule 12(b)(6).  Defendants also argue that the claims against defendants Clothier and Roy should be dismissed for lack of personal jurisdiction and improper venue.

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."  <u>Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp.</u>, 549 U.S. 422, 430-31 (2007).  Therefore, the Court first addresses the jurisdictional issues before reaching Defendants' other arguments.

A.    <u>Lack Of Personal Jurisdiction</u>

Omran ultimately bears the burden of persuading the Court that it has personal jurisdiction over the Defendants.  <u>Hannon v. Beard</u>, 524 F.3d 275, 279 (1st Cir. 2008).  In

considering a motion to dismiss for lack of personal jurisdiction, a court may choose from three methods for determining whether the plaintiff has met his burden of establishing personal jurisdiction.  Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007).  These methods include the prima facie method, the "preponderance of the evidence" method, and the "likelihood" method. Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145-47 (1st Cir. 1995). When, as here, a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, the "prima facie" standard governs its determination.  United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001).  Under the prima facie standard, Omran must "go beyond the pleadings and make affirmative proof" to demonstrate the existence of personal jurisdiction.  Id. at 619.  However, the Court "accept[s] the plaintiff's (properly documented) evidentiary proffers as true" and construes those facts "in the light most congenial to the plaintiff's jurisdictional claim."  Hannon, 524 F.3d at 279 (internal quotation marks and citations omitted).

The Court lacks personal jurisdiction over defendants Clothier and Roy.  Clothier and Roy both reside and work outside of Massachusetts and Omran has not alleged that they took any steps against him within Massachusetts.  Moreover, Omran has made no allegations that Clothier and Roy have the necessary minimum contacts with the District of Massachusetts to warrant long-arm jurisdiction.  See Burger King Corp. v. Rudzewickz, 471 U.S. 462, 474-475 (1985). The Court, therefore, may not exercise jurisdiction over Omran's claims for monetary relief against Clothier and Roy individually.  Any claims against them in their individual capacity should therefore be dismissed.

B.       Lack Of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction.  Destek Group, Inc. v. State of New Hampshire Pub. Util. Comm'n, 318 F.3d 32, 38 (1st Cir. 2003).  The party claiming that there is jurisdiction carries the burden of showing that the court has jurisdiction.  Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

When considering a motion to dismiss under Rule 12(b)(1), "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996).  Under Rule 12(b)(1), the Court is not restricted to the pleadings but may consider extra-pleading materials such as affidavits and testimony to resolve factual disputes concerning the existence of jurisdiction.  Id.

1.  Sovereign Immunity Bars Bivens Claims Against The United States
    Or The Individual Defendants In Their Official Capacities

Omran brings Bivens claims against the individual Defendants in their individual and official capacities.  AC ¶¶ 2-8.  Actions brought against federal employees in their "official" capacity are deemed suits against the United States.  Marino v. Gammel, 191 F. Supp. 2d 243, 252 (D. Mass. 2002) (citing 28 U.S.C. § 2679; Hawaii v. Gordon, 373 U.S. 57 (1963)).  However, it is well-settled that the doctrine of sovereign immunity bars Bivens claims against the United States or its agencies.  McCloskey v.  Mueller, 446 F.3d 262, 271-272 (1st Cir. 2006) (citation omitted); Tapia-Tapia v. Potter, 322 F.3d 742, 746 (1st Cir. 2003).  Accordingly, any Bivens claims against the individual Defendants in their official capacities and against the United States are subject to dismissal.

2.   <u>The Westfall Act Bars State Law Tort Claims Against The Individual Defendants</u>

Under the doctrine of sovereign immunity, the United States is immune from suit unless it has consented to be sued.  <u>Skwira v. United States</u>, 344 F.3d 64, 72 (1st Cir. 2003) (citing <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980)).  However, the FTCA, 28 U.S.C. §§ 1346(b), 2671-80, provides a limited waiver of sovereign immunity for tort actions against the United States.  <u>Sosa v. Alvarez-Machain</u>, 542 U.S. 692, 700 (2004).  Specifically, the FTCA permits individuals to sue the government "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment."  28 U.S.C. § 1346(b)(1); <u>see also</u> 28 U.S.C. § 2674 ("The United States shall be liable [with respect] . . . to tort claims, in the same manner and to the same extent as a private individual under like circumstances. . . .").

The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, amended the FTCA to make an action against the United States the exclusive remedy for money damages for a negligent or wrongful act or omission of a federal employee "while acting within the scope of his office or employment."  28 U.S.C. § 2679(b)(1); <u>see</u> <u>also</u> <u>Lyons v. Brown</u>, 158 F.3d 605, 609 (1st Cir. 1998).  Federal employees are immune from suit for torts committed within the scope of their employment.  <u>Aversa</u>, 99 F.3d at 1207. "This individual immunity subsists even if government liability is otherwise foreclosed." <u>Rosario v. United States</u>, 538 F. Supp. 2d 480, 490 (D.P.R. 2008) (citing <u>Operation Rescue Nat'l v. United States</u>, 147 F.3d 68, 69 (1st Cir. 1998)).  "In other words, the FTCA provides 'the exclusive mode of recovery for the tort of a Government employee even when the FTCA itself precludes Government liability.'"  <u>Id.</u> (citations omitted).

Here, Omran alleges that the individual Defendants' negligent or wrongful acts were done within the scope of their employment as federal government employees.  AC ¶ 27.[6] Accordingly, Omran's state law tort claims against the individual Defendants are barred by the Westfall Act.

    3.   <u>The FTCA Bars Any Claims Arising Out Of Loss Or Damage To Seized Property</u>

The FTCA also bars claims arising out of the detention of property by "any officer of customs or excise or any other law enforcement officer."  28 U.S.C. § 2680(c).  In <u>Ali v. Federal Bureau of Prisons</u>, 552 U.S. 214, 215 (2008), the Supreme Court made clear that Section 2680(c) applies to claims arising from the detention of property by all federal law enforcement officers. <u>Id.</u> at 216.  Therefore, to the extent that Omran brings claims for the loss of or damage to his property by Defendants Catchins or Roy, those claims are barred by the FTCA.

    4.   <u>The FTCA Bars The Claims Against The ICE Director For Failure To Investigate</u>

The FTCA also bars Omran's claims against the ICE Director.  The waiver of sovereign immunity under the FTCA does not apply to "discretionary functions."  Section 2680(a) provides, in relevant part:

> The provisions of this chapter and section 1346(b) of this title shall not apply to –
>
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an

---

[6] Generally, the exclusive remedy provision is invoked through a certification by the Attorney General or her delegate that the defendant employee was acting within the scope of his office or employment at the time of the incident and the United States is then substituted as the party defendant.  28 U.S.C. § 2679(d)(1).  Here, however, Omran himself has alleged that the individual Defendants were acting within the scope of their employment and has also named the United States as a defendant.  AC ¶ 27.

> employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).  Therefore,

> [E]ven where the government conduct would create state tort liability in a suit against a private party, the FTCA provides that sovereign immunity is not waived if the challenged governmental action involved the exercise of discretion.   28 U.S.C. § 2680(a).   This provision is known as the discretionary function exception.  In general, that exception, in turn, is inapplicable if the government action is contrary to the requirements of Federal law.  United States v. Gaubert, 499 U.S. 315, 324-25, 111 S. Ct. 1267, 113 L.Ed.2d 335 (1991).

Abreu v. United States, 468 F.3d 20, 23 (1st Cir. 2006).  To be discretionary, the conduct must involve "an element of judgment or choice." Id. (quoting Gaubert, 499 U.S. at 322).

Here, Omran's FTCA claims against the ICE Director are based on his or her alleged failure to investigate Omran's complaint against Officer Bleezarde.  AC ¶¶ 17, 26.  However, investigations and disciplinary measures involve an element of judgment or choice.  Omran v. United States, No. 14-13881-LTS, 2015 WL 1523587, at *8 (D. Mass. Mar. 31, 2015).  In addition, although Omran alleges in a conclusory fashion that the Director "had an obligation to follow the law of the United States . . . [which was] mandatory and not discretionary," AC ¶ 26, he has not set forth any federal law that would dictate the ICE Director's actions.  Accordingly, the discretionary function exception bars Omran's claims based on the ICE Director's failure to investigate his complaint.[7]

C.      Improper Venue

Rule 12(b)(3) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss for improper venue.  Fed. R. Civ. P. 12(b)(3).  When ruling on a defendant's motion to

---

[7] Omran does not have a due process right to an investigation.  See Agunbiade v. United States, 893 F. Supp. 160, 163 (E.D.N.Y. 1995) (court declines to issue mandamus directing Department of Justice and FBI to pursue disciplinary action).

dismiss for improper venue, the Court must treat all facts pled in the Complaint as true and draw all reasonable inferences in the plaintiff's favor.  <u>Johnson v. General Dynamics Infor. Tech., Inc.</u>, 675 F. Supp. 2d 236, 239 (D.N.H. 2009).  The plaintiff has the burden of proving that its chosen venue is proper.  <u>Id.</u>

Venue in a <u>Bivens</u> case is governed by 28 U.S.C. § 1391(b).  <u>Stafford v. Briggs</u>, 444 U.S. 527, 544 (1980).  Under that provision, venue is proper in "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."  28 U.S.C. § 1391(b).  Thus, venue is proper if the "'activities that transpired in the forum district were not insubstantial in relation to the totality of the events' plaintiff alleges."  <u>Gonzalez v. Holder</u>, 763 F. Supp. 2d 145, 153 (D.D.C. 2011) (citation omitted).

Generally, a plaintiff must "demonstrate proper venue with respect to each cause of action and each [defendant]."  <u>Coltrane v. Lappin</u>, 885 F. Supp. 2d 228, 234 (D.D.C. 2012).  However, when venue lies for some of a plaintiff's claims, the doctrine of pendent venue may allow the court to entertain other claims that are not properly venued in the court.  <u>Id.</u> (citation omitted).  "Pursuant to pendent venue, federal courts may exercise their discretion to hear claims as to which venue is lacking if those claims arise out of a common nucleus of operative facts as the claims that are appropriately venued *and* the interests of judicial economy are furthered by hearing the claims together."  <u>Id.</u> (citations omitted; emphasis in original).

Here, venue is improper as to the claims against Clothier and Roy.  Omran alleges that Clothier searched the computer that was seized – not by Clothier but by Bleezarde and Galway –

from Omran's residence in Methuen, Massachusetts.  AC ¶ 22.  However, Omran also alleges

that Clothier was employed by the Department of Homeland Security in Manchester, New

Hampshire.  AC ¶ 3.  Omran does not allege any facts to establish that the search of the computer

by any federal agents occurred in Massachusetts.

Similarly, Omran alleges that Roy allowed a computer expert to access Omran's

computer while in her custody on March 21, 2014.  AC ¶ 24.  He further alleges that she was

employed by the United States Marshals Service in Alexandria, Louisiana.  AC ¶ 6.  There are no

allegations in the Amended Complaint tying Roy's alleged actions to Massachusetts.  Because

the Court has found that it has no jurisdiction over Clothier or Roy, it declines to recommend that

the District Court exercise pendent venue over the claims against them.

        D.      <u>Failure To State A Claim</u>

A complaint must contain only "a short and plain statement of the claim showing that the

pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atlantic Corp. v.

Twombly</u>, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged."  <u>Id.</u>  "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."

<u>Id.</u>

In assessing the sufficiency of the complaint, "an inquiring court must first separate

wheat from chaff; that is, the court must separate the complaint's factual allegations (which must

be accepted as true) from its conclusory legal allegations (which need not be credited)."

Guadalupe-Baez v. Pesquera, __ F.3d __, 2016 WL 1592690, at *3 (1st Cir. Apr. 20, 2016)

(citing Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  The Court must then

determine "whether the well-pleaded facts, taken in their entirety, permit 'the reasonable

inference that the defendant is liable for the misconduct alleged.'"  Id. (citations omitted).

    Omran brings this action primarily under the FTCA and Bivens.  Congress views the

FTCA and Bivens as parallel, complimentary causes of action.  Carlson v. Green, 446 U.S. 14,

20-21 (1980).  "This has been interpreted to mean that Bivens is the method by which

constitutional tort claims are brought, while claims for negligence and certain intentional (but not

constitutional) torts are brought under the FTCA."  McMann v. United States, No. 12-11872-

PBS, 2014 WL 2781164, at *2 (D. Mass. June 18, 2014) (citing Washington v. Drug

Enforcement Admin., 183 F.3d 868, 873-74 (8th Cir. 1999)).

    1.  Omran Has Failed To State A Claim Under The FTCA

    In the Amended Complaint, Omran asserts state law claims for abuse of process, invasion

of privacy, discrimination, unreasonable search and seizure, and emotional distress.  AC ¶¶ 20-

24.  "The 'law of the place' provides the substantive rules to be used in deciding FTCA actions."

Bolduc v. United States, 402 F.3d 50, 56 (1st Cir. 2005).  The law of the place refers to the law

of the state in which the allegedly tortious acts or omissions occurred.  Id. (citation omitted).

Omran cites to Massachusetts law[8] regarding the claims based on the alleged actions of

Bleezarde, Galway, Clothier, and Catchins and Lousiana law regarding the claims based on the

actions of Roy.

---

[8] The Defendants have not objected to Omran's reliance on Massachusetts law.

a.      Abuse Of Process

To sustain an abuse of process claim under Massachusetts law,[9] Omran must establish that "process was used 'to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular process employed.'" Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 636 (2010) (quoting Quaranto v. Silverman, 345 Mass. 423, 426 (1963)).  Thus, the three elements of abuse of process are (1) "process" was used, (2) for an ulterior or illegitimate purpose, (3) resulting in damage.  Id. (citations omitted); Gutierrez v. Mass. Bay Transp. Auth., 437 Mass. 396, 407 (2002) (citations omitted); Jones v. Brockton Pub. Mkts., Inc., 369 Mass. 387, 389 (1975).

"Process" refers to "the papers issued by a court to bring a party or property within its jurisdiction."  Jones, 369 Mass. at 390.  Massachusetts courts have limited process to three types: writs of attachment, the process used to institute a civil action, and the process related to the bringing of criminal charges.  Id. at 389-90.

Omran does not allege any facts that would show that process was used.  While he alleges that he was arrested and charged with "false claim of citizenship," see AC ¶ 11, none of his claims appear to arise out of the process to bring the criminal charges themselves, but rather out of the allegedly illegal searches.  See AC ¶ 22.  In addition, he has not sufficiently pled an ulterior or illegitimate purpose.  Omran alleges that the ulterior motive was "to deprive plaintiff of his constitutional rights based on his ethnicity."  AC ¶ 22.  However, an ulterior purpose is not simply the intent to harm the other party directly by using process, but rather the intent to gain some other end indirectly.  See Fontanez v. City of Worcester, No. 09-40203-FDS, 2012 WL

---

[9] Omran does not appear to assert an abuse of process claim against Roy under Louisiana law. See AC ¶ 24.

2829613, at *11 (D. Mass. July 9, 2012) (citing <u>Psy-Ed Corp. v. Klein</u>, 459 Mass. 697, 714, n. 35 (2011)).  Therefore, he has failed to state a claim for abuse of process.

> b.  <u>Invasion Of Privacy</u>

M.G.L. c. 214, § 1B ("Section 1B") provides that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy."  M.G.L. c. 214, § 1B. "Section 1B protects people from 'disclosure of facts . . . that are of a highly personal or intimate nature when there exists no legitimate, countervailing interest.'"  <u>Dasey v. Anderson</u>, 304 F.3d 148, 154 (1st Cir. 2002) (citations omitted).  Section 1B "is typically invoked to remedy 'the gathering and dissemination of information which the plaintiffs contended was private."  <u>Id.</u> (citing <u>Schlesinger v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 409 Mass. 514 (1991)).

Under Louisiana law, "invasion of privacy can occur in four ways: (1) by appropriating an individual's name or likeness; (2) by unreasonably intruding on physical solitude or seclusion; (3) by giving publicity which unreasonably places a person in a false light before the public; and (4) by unreasonable public disclosure of embarrassing private facts."  <u>Tate v. Woman's Hosp. Found.</u>, 56 So.3d 194, 197 (La. 2011) (citation omitted).  The Amended Complaint alleges no facts giving rise to an invasion of privacy claim under either Massachusetts or Louisiana law.

> c.  <u>Discrimination And Unreasonable Search And Seizure Claims</u>

With respect to the "discrimination" claims, Omran does not state which cause of action he is attempting to assert.  There may be a number of state law claims for discrimination in different contexts (<u>e.g.</u>, laws prohibiting discrimination in employment), none of which seem to apply to the facts alleged in the Amended Complaint.  Similarly, the Court is not aware of any state law claims for "unreasonable search and seizure" under Massachusetts or Louisiana law and Omran has not cited to any.

18

Although <u>pro se</u> pleadings are liberally construed, the burden is on Omran to set forth

plausible claims upon which relief may be granted and to provide sufficient notice to the

Defendants of his claims.  <u>Ateek v. Massachusetts</u>, No. 11-11566-DPW, 2011 WL 4529393, at

*3 (D. Mass. Sept. 27, 2011) (citing to Rule 8 of the Federal Rules of Civil Procedure).  The

Court cannot fashion claims for Omran.  "District courts are not required to conjure up questions

never squarely presented to them or to construct full blown claims from sentence fragments."  <u>Id.</u>

at *3 n. 7 (quoting <u>Terrance v. Cuyahoga Cnty.</u>, No. 1:05 CV 1926, 2005 WL 2491531, at * 1

(N.D. Ohio Oct. 7, 2005)).  Such an exercise by the court would "require . . . [the courts] to

explore exhaustively all potential claims of a <u>pro se</u> plaintiff, . . . [and] would . . . transform the

district court from its legitimate advisory role to the improper role of an advocate seeking out the

strongest arguments and most successful strategies for a party."  <u>Id.</u>  "The failure to identify a

particular legal theory . . . places an unfair burden on the defendant to speculate on the potential

claims that plaintiff may be raising against it and the defenses it might assert in response to each

of these possible causes of action."  <u>Id.</u>

      d.    <u>Intentional Infliction Of Emotional Distress</u>

Finally, Omran appears to assert a claim for intentional infliction of emotional distress.

To prevail on a claim of intentional infliction of emotional distress, Omran must prove that (1)

Defendants either intended to inflict emotional distress, or knew or should have known that

emotional distress was the likely result from their conduct; (2) Defendants' conduct was extreme

and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a

civilized society; (3) Defendants' conduct caused Omran emotional distress; and (4) the

emotional distress suffered by Omran was severe and of a nature that no reasonable person could

be expected to endure it.  Conley v. Romeri, 60 Mass. App. Ct. 799, 803 (2004).  The

Massachusetts Supreme Judicial Court has explained that

> Liability cannot be predicated on mere insults, indignities, threats, annoyances, petty oppressions or other trivialities nor even is it enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.

Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997) (internal quotation marks

and citations omitted).

The test for intentional infliction of emotional distress is demanding, and requires

behavior that is "extreme and outrageous . . . beyond all possible bounds of decency and . . .

utterly intolerable in a civilized society."  Conley, 60 Mass. App. Ct. at 803.

Similarly, a plaintiff seeking damages for intentional infliction of emotional distress

under Louisiana law must prove: "(1) that the conduct of the defendant was extreme and

outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the

defendant desired to inflict severe emotional distress or knew that severe emotional distress

would be certain or substantially certain to result from his conduct."  Labbe v. Chemical Waste

Mgmt., Inc., 786 So.2d 868, 872 (La. App. 3rd Cir. 2001).  Omran has failed to allege any

extreme and outrageous conduct under either state's law by any of the Defendants.

Accordingly, the Court finds that Omran has failed to plead any plausible state law tort

claim and, therefore, failed to plead a plausible FTCA claim.

2.   Bivens Claims

a.   Omran's Claims Are Barred By The "Equally Effective Remedy" Doctrine

An action for damages brought against federal officials in their individual capacity

pursuant to the U.S. Constitution is referred to as a <u>Bivens</u> action.  <u>See</u> <u>Bivens</u>, 403 U.S. at 397.

"However, the Supreme Court 'in most instances' has found the <u>Bivens</u> remedy to be

'unjustified.'"  <u>Hensley v. Office of the Architect of the Capitol</u>, 806 F. Supp. 2d 86, 92 (D.D.C.

2011) (citing <u>Wilkie v. Robbins</u>, 551 U.S. 537, 550 (2007)).  Indeed, the Supreme Court has

responded cautiously to suggestions that <u>Bivens</u> be extended into new contexts.  <u>Id.</u> (citing

<u>Schweiker v. Chilicky</u>, 487 U.S. 412, 421 (1988)).

There are two instances where it is clearly not appropriate to award money damages in a

<u>Bivens</u> claim: (1) when there are "special factors" counseling against creating a <u>Bivens</u> remedy,

and (2) where there is a congressional declaration prohibiting recovery of monetary damages or

remitting recovery to another equally effective remedy.  <u>Leyland v. Edwards</u>, 797 F. Supp. 2d 7,

10 (D.D.C. 2011).  In a motion to dismiss, a defendant bears the burden to prove the existence of

one of these two instances.  <u>Id.</u> (citing <u>Carlson v. Green</u>, 446 U.S. 14, 18-19 (1980)).

Here, Omran appears to allege that, in connection with his arrest in 2012, FBI and ICE

agents conducted searches and seized certain property, including a computer and some

documents.  He further appears to allege that while the computer was in the custody of the U.S.

Marshals Service, it was tampered with and data removed from the hard drive.  The Defendants

argue that a comprehensive and remedial scheme for individuals seeking the return of unlawfully

seized property exists in the form of Rule 41(g) of the Federal Rules of Criminal Procedure and,

therefore, a <u>Bivens</u> remedy is not available to Omran.  Docket No. 41 at 10.  This Court agrees.

Rule 41(g) provides that a "person aggrieved by the unlawful search and seizure of

property or by the deprivation of property may move for the property's return."  Fed. R. Crim. P.

41(g); <u>see</u> <u>Perez-Colon v. Camacho</u>, 206 Fed. Appx. 1, 2 (1st Cir. 2006).  Although Rule 41(g)

does not provide damages as a remedy, "[a] remedial statute need not provide full relief to the

plaintiff to qualify as a 'special factor.'" <u>Leyland</u>, 797 F. Supp. 2d at 10-11.  Accordingly,

Omran's <u>Bivens</u> claims pertaining to the return of property are barred due to the provision of an

adequate, comprehensive procedural and remedial scheme pursuant to Rule 41(g).

      b.  Omran Has Failed To State A Plausible Claim Of
          <u>A Constitutional Violation By The ICE Director</u>

Omran alleges that the ICE Director "neglected to do his duties to investigate the

plaintiff's complaint only because of the plaintiff [sic] racial ethnicity" and, therefore, violated

Omran's equal protection and due process rights.  AC ¶ 26.  "The liberty protected by the Fifth

Amendment's Due Process Clause contains within it the prohibition against denying to any

person the equal protection of the laws."  <u>United States v. Windsor</u>, 133 S. Ct. 2675, 2695 (2013)

(citations omitted).  The equal protection component of the Due Process Clause is "essentially a

direction that all persons similarly situated be treated alike."  <u>City of Cleburne v. Cleburne

Living Ctr., Inc.</u>, 473 U.S. 432, 439 (1985).  "To state a valid claim under the equal protection

component of the Fifth Amendment, Plaintiff 'must show that the statute in question results in

members of a certain group being treated differently from other persons based on membership in

that group."  <u>Wilson v. Holder</u>, 7 F. Supp. 3d 1104, 1124 (D. Nev. 2014) (citations omitted).

Here, while Omran has alleged that the ICE Director did not investigate his complaint

because of his racial ethnicity, he has not identified his racial ethnicity.  He has failed to identify

any similarly situated individuals who received more favorable treatment than he did.  He has

also alleged no facts from which one could infer a discriminatory intent.  "Although there is no

heightened pleading standard for civil rights claims, mere conclusory allegations of

discrimination unsupported by any facts are insufficient for notice pleading purposes."  <u>Toledo v.

Sanchez</u>, 454 F.3d 24, 34 (1st Cir. 2006).  Accordingly, Omran has failed to state a plausible

claim for violation of his equal protection rights against the ICE Director.

c. Omran Has Failed To Sufficiently Plead Constitutional Claims
   Against Defendants Bleezarde, Clothier, Galway, Catchins, And Roy

Omran alleges in a conclusory fashion that Defendants Bleezarde, Clothier, Galway, Catchins, and Roy violated his Fourth and Fifth Amendment rights against unreasonable search and seizure, his right to due process, and his right to equal protection of the law. AC ¶¶ 20-24. However, he does little more than a cursory listing of possible constitutional violations.

The closest Omran gets to stating a constitutional claim is his allegation that Defendant Bleezarde violated his Fourth Amendment rights by falsely "claim[ing] that while the plaintiff was incarcerated, his landlord had accessed his computer and noticed suspicious digital files which led her to report the incident to the department of Homeland Security." AC ¶ 13. However, this claim has not been sufficiently pled.

"[T]he use of false statements to obtain a warrant, where the false statements are necessary to the finding of probable cause, violates the Fourth Amendment's warrant requirement." Aponte Matos v. Toledo Davila, 135 F.3d 182, 187 (1st Cir. 1998). An officer who obtains a warrant through material false statements which result in an unconstitutional search may be held personally liable for his actions. Id. In order to prevail on such a claim, the plaintiff must establish that "a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in a warrant affidavit [and] the false statement is necessary for a finding of probable cause. Id. (citations omitted).

"As warrant affidavits benefit from an assumption of validity, 'the challenger's attack must be more than conclusory.'" Cruz-Acevedo v. Toledo-Davila, No. 07-2104, 2009 WL 497499, at *1 (D.P.R. Feb. 26, 2009) (citing United States v. Franks, 438 U.S. 154, 171 (1978)). Therefore, some courts have required that the plaintiff allege the specific parts of the warrant affidavit that the plaintiff believes to be false. Id. at *2 (collecting cases). In addition, other

courts have required the plaintiff to allege that these falsehoods were material to the issuance of the warrant: that the magistrate judge relied on the alleged falsehood and that there is no other basis for a finding of probable cause.  Id.

Here, Omran has not alleged sufficient facts that, if true, would show that the alleged false statement in the search warrant affidavit was material to the issuance of the warrant. Accordingly, Omran has failed to state a plausible claim for a Fourth Amendment violation.

### 3. Omran Has Failed To State Claims Under Sections 1985 And 1986

Omran also alleges that the Defendants conspired to deprive him of his rights based on his racial ethnicity and national origin in violation of Sections 1985 and 1986.  See, e.g., AC ¶ 20.  A prerequisite for a claim under Section 1986 "is the existence of a conspiracy actionable under section 1985."  Lowden v. William M. Mercer, Inc., 903 F. Supp. 212, 218 (D. Mass. 1995) (citations omitted); see also Hahn v. Sargent, 523 F.2d 461, 470 (1st Cir. 1975).  In order to state a claim under Section 1985, Omran must show "(1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege.  Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (citing Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).[10]

---

[10] Omran does not specify which subsection of Section 1985 he is invoking.  Subsection (1) deals with preventing an officer from performing his duties by force, intimidation or threats.  42 U.S.C. § 1985(1).  Section 1985(2) deals with obstructing justice to deter any party or witness from attending or testifying in a court proceeding.  42 U.S.C. § 1985(2).  There are no allegations in the Amended Complaint that would invoke either of these provisions.  It appears that Omran is invoking subsection (3) which deals with conspiracies intended to deprive an individual or class of persons of protected rights based on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."  Aulson, 83 F.3d at 3 (citation omitted).

Omran has failed to allege a conspiracy under Section 1985.  The Amended Complaint contains no allegations from which the Court could infer that the Defendants conspired for the purpose of denying Omran equal protection, nor, based on the allegations in the Amended Complaint construed in Omran's favor, is there any factual support for an allegation of discriminatory animus.  Futher, Omran has not alleged an overt act in furtherance of the conspiracy.  Thus, because Omran has not stated a plausible Section 1985 claim, he also has failed to state a plausible Section 1986 claim.

       4.   <u>Omran Is Not Entitled To Injunctive Relief Against The Individual Defendants</u>

Finally, Plaintiff seeks injunctive relief.  AC at p. 13.  Injunctive relief, however, is not available against a defendant sued in his individual capacity.  <u>Hatfill v. Gonzales</u>, 519 F. Supp. 2d 13, 26 (D.D.C. 2007).  Accordingly, any claims for injunctive relief against the individual Defendants in their personal capacity are subject to dismissal.

       E.     <u>Omran's Motion To Amend The Complaint</u>

Omran has filed a motion to amend his complaint.  Docket No. 44.  He states that the proposed amendment "is necessary in order to cure any deficiency in the original complaint and in order to address some issues raised by the government in its motion to dismiss."  <u>Id.</u> at 1.  However, the proposed amended complaint attached to the motion is substantially the same as the operative Amended Complaint.  Therefore, amendment would be futile.  <u>See</u> <u>Abraham v. Woods Hole Oceanographic Inst.</u>, 553 F.3d 114, 117 (1st Cir. 2009) (leave to amend need not be granted if the amendment would be futile).  The Court notes that Omran was already given a chance to cure the deficiencies in his complaint.  Accordingly, the Court recommends that the District Court deny the motion to amend.

F.      Motion To Supplement Plaintiff's Opposition To Defendants' Motion To Dismiss

Finally, Omran has filed a motion to supplement his opposition to Defendants' motion to dismiss.  Docket No. 47.  The Court has granted this motion only to the extent that this Court has read and considered the arguments presented by Omran in that filing.  However, those arguments are unpersuasive and do not change the Court's determination that Omran's Amended Complaint is deficient for the reasons described above and should be dismissed.

IV.     RECOMMENDATION

For the foregoing reasons, this Court recommends that the District Judge assigned to this case grant the Defendants' motion to dismiss (Docket No. 40), deny Omran's motion to amend the complaint (Docket No. 44), and dismiss Omran's Amended Complaint.

V.      REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983

F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge